**VERIZON PENNSYLVANIA
INC., Petitioner**

v.

**WORKERS' COMPENSATION AP-
PEAL BOARD (KETTERER),
Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 11, 2014.
Decided March 12, 2014.

Zachary M. Rubinich and Ross J. Ventre, II, Philadelphia, for petitioner.

Kenneth N. Brodsky, Bala Cynwyd, and Daniel J. Siegel, Havertown, for respondent Arthur Ketterer.

BEFORE: COHN JUBELIRER, Judge, and McCULLOUGH, Judge, and COLINS, Senior Judge.

OPINION BY Senior Judge COLINS.

Verizon Pennsylvania Inc. (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed the denial of its Modification Petition on the ground that the physician who performed the Impairment Rating Evaluation (IRE) on which the Modification Petition was based did not meet the requirement of Section

306(a.2) of the Workers' Compensation Act (the Act)[1] that physicians performing IREs must be "active in clinical practice for at least twenty hours per week." We affirm.

Arthur Ketterer, Jr. (Claimant), a service technician for Employer whose duties included installations and repairs for telephone, television and computer service, suffered a neck and back strain on August 27, 2008, when his work vehicle was rear-ended. Claimant has been receiving total disability benefits since 2008 for that injury under a Notice of Compensation Payable issued by Employer. On March 23, 2009, Employer filed a petition for termination of compensation, which was denied by the Workers' Compensation Judge (WCJ) on June 30, 2010.

On November 17, 2010, Employer filed a request with the Bureau of Workers' Compensation (Bureau) for designation of a physician to perform an IRE. The Bureau designated Dr. Elena Antonelli to perform the IRE. Dr. Antonelli examined Claimant on January 5, 2011, and issued an Impairment Rating Determination and IRE report finding that Claimant had reached maximum medical improvement and had a whole person impairment rating of 16%. (Impairment Rating Determination Face Sheet, R.R. at 153–154; IRE Report, R.R. at 143–152.) On February 10, 2011, Employer filed a Modification Petition seeking to change Claimant's status from total disability to partial disability based on Dr. Antonelli's IRE.

Dr. Antonelli is licensed to practice medicine in Pennsylvania and is board-certified in Occupational Medicine. (Trial Deposition of Elena Antonelli, M.D. at 6, R.R. at 83.) She has taken training on the American Medical Association *Guides to the Evaluation of Permanent Impairment* (AMA Guides) that physicians are to apply in performing IREs and has performed IREs under both the fifth edition AMA Guides and the current, sixth edition AMA Guides. (*Id.* at 7, R.R. at 84.) At the time of her examination of Claimant, Dr. Antonelli was approved by the Bureau as a certified IRE physician. (*Id.* at 55–56, R.R. at 132–133; Exhibit D–1, R.R. at 67–68.) The Bureau's approval of Dr. Antonelli as an IRE physician was based on her 2008 application that listed as clinical experience her treatment of patients at Capital Health System. (Application for Approval as IRE Physician, R.R. at 165–172.)

At the time of the IRE, however, Dr. Antonelli did not treat or manage the care of any patients. (Antonelli Dep. at 7, 10–11, 36, 38–39, R.R. at 84, 87–88, 113, 115–116.) Dr. Antonelli had worked 20 hours a week or more treating patients at Capital Health System until February 2010, ten months before she performed the IRE of Claimant. (*Id.* at 37–39, R.R. at 114–116.) Since she left Capital Health System in February 2010, her practice consisted solely of workers' compensation independent medical examinations, workers' compensation IREs, physical examinations for pilots to determine whether they satisfy Federal Aviation Administration certification requirements, commercial driver's license examinations, utilization reviews and peer reviews. (*Id.* at 7, 10–11, 36, R.R. at 84, 87–88, 113.)

At her trial deposition on the Modification Petition, Dr. Antonelli testified:

Q. What does your current clinical practice entail?

A. *I don't have that much of a clinical practice any longer. I do Impairment*

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2708. Section 306(a.2) was added by the Act of June 24, 1996, P.L. 350, No. 57, § 4, *as amended,* 77 P.S. § 511.2.

*Ratings, I.M.E.s, physical examination for pilots. I don't really handle injuries any longer, but I do disability examinations and those kinds of things.*

\* \* \*

Q. You indicated that you have a clinical practice or you don't have a clinical practice?

A. It's partly clinical but mostly administrative at this point.

Q. When you say partly clinical, do you see patients here?

A. I see some patients, yes.

Q. Approximately how many patients do you have?

A. *I don't have any private patients in Occupational Medicine. I do it on like the F.A.A. list to do physicals for pilots. And I do see I.M.E.s and disability cases and that sort of thing, but I don't actually have any private patients.*

\* \* \*

Q. You do not maintain any patient-doctor relationship?

A. No.

Q. Okay. *So essentially your work is administrative?*

A. *Most of it, yes. To me it's a lot of utilization reviews and peer reviews and those kinds of things.*

Q. *You don't have any hands-on practice where patients come in and see you and you're rendering treatment and diagnoses?*

A. *No. I have a long history of doing that but not in this practice.*

(*Id.* at 7, 9–11, R.R. at 84, 86–88) (emphasis added).

On October 19, 2011, the WCJ denied Employer's Modification Petition on the grounds that Dr. Antonelli did not meet the requirement of Section 306(a.2)(1) of the Act that physicians performing IREs must be "active in clinical practice for at least twenty hours per week." 77 P.S. § 511.2(1). Employer timely appealed and the Board, on June 11, 2013, affirmed, holding that Dr. Antonelli's testimony that she performs medical examinations, but treats no patients, established that she did not satisfy the requirement that IRE physicians be active in clinical practice. This appeal followed.[2]

Section 306(a.2) of the Act provides for evaluation of the degree of permanent impairment caused by a work injury and for reduction of a claimant's disability status from total disability to partial disability based on the degree of impairment determined by such an IRE. Section 306(a.2)(1) of the Act states:

> When an employe has received total disability compensation pursuant to [77 P.S. § 511] for a period of one hundred four weeks, unless otherwise agreed to, the employe shall be required to submit to a medical examination which shall be requested by the insurer within sixty days upon the expiration of the one hundred four weeks to determine the degree of impairment due to the compensable injury, if any. *The degree of impairment shall be determined based upon an evaluation by a physician* who is licensed in this Commonwealth, who is certified by an American Board of

---

2. Our review is limited to determining whether an error of law was committed, whether the WCJ's necessary findings of fact are supported by substantial evidence and whether constitutional rights were violated. *Stanish v. Workers' Compensation Appeal Board (James J. Anderson Construction Co.),* 11 A.3d 569, 572 n. 1 (Pa.Cmwlth.2010). The issue here, whether the facts concerning a physician's practice constitute an "active," 20–hour per week "clinical practice" under Section 306(a.2)(1) of the Act, is a question of law subject to this Court's plenary, *de novo* review. *Gardner v. Workers' Compensation Appeal Board (Genesis Health Ventures),* 585 Pa. 366, 372 n. 4, 888 A.2d 758, 761 n. 4 (2005); *Stanish,* 11 A.3d at 572 n. 1.

Medical Specialties approved board or its osteopathic equivalent and *who is active in clinical practice for at least twenty hours per week*, chosen by agreement of the parties, or as designated by the department, pursuant to the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment." 77 P.S. § 511.2(1) (emphasis added).

■ An IRE requested within the time limits set forth in Section 306(a.2)(1) that results in an impairment rating of less than 50% operates to automatically reduce the claimant's status to partial disability. 77 P.S. § 511.2(1), (2); *Gardner v. Workers' Compensation Appeal Board (Genesis Health Ventures )*, 585 Pa. 366, 379–82, 888 A.2d 758, 765–68 (2005); *Stanish v. Workers' Compensation Appeal Board (James J. Anderson Construction Co.)*, 11 A.3d 569, 574 (Pa.Cmwlth.2010); *Ford Motor/Visteon Systems v. Workers' Compensation Appeal Board (Gerlach)*, 970 A.2d 517, 520 (Pa.Cmwlth.2009). If the IRE is not requested within those time limits, an IRE may be requested under Section 306(a.2)(6), 77 P.S. § 511.2(6), but reduction of claimant's status to partial disability based on the results of such an IRE is not automatic and must be sought through a modification petition. *Gardner*, 585 Pa. at 379–80, 382, 888 A.2d at 766, 768; *Stanish*, 11 A.3d at 574; *Ford Motor/Visteon Systems*, 970 A.2d at 520. The requirements for a valid IRE specified in Section 306(a.2)(1) apply equally to IREs requested and performed under Section 306(a.2)(6). *Diehl v. Workers' Compensation Appeal Board (I.A. Construction)*, 607 Pa. 254, 278–80, 5 A.3d 230, 245–46 (2010); *Lewis v. Workers' Compensation Appeal*

*Board (Wal–Mart Stores)*, 856 A.2d 313, 318–19 (Pa.Cmwlth.2004); *see also Combine v. Workers' Compensation Appeal Board (National Fuel Gas Distribution Corp.)*, 954 A.2d 776, 780 (Pa.Cmwlth. 2008).

■ The requirements set forth in Section 306(a.2)(1) are mandatory. *Gardner*, 585 Pa. at 378–79, 888 A.2d at 765–66; *Stanish*, 11 A.3d at 575; *Combine*, 954 A.2d at 780. An IRE that does not satisfy the requirements for IREs imposed by Section 306(a.2)(1) is invalid and cannot support a change in the claimant's disability status. *Stanish*, 11 A.3d at 575–77 (vacating decision upholding partial disability status because IRE not based on most recent addition of AMA Guides is invalid); *Combine*, 954 A.2d at 780–82 (IRE that did not satisfy AMA Guides requirement of determination of maximum medical improvement could not support grant of employer modification petition). Because Section 306(a.2)(1) requires that the IRE be "by a physician ... who is active in clinical practice for at least twenty hours per week," 77 P.S. § 511.2(1), an IRE performed by a physician who does not have a "clinical practice" cannot support a modification of a claimant's disability status.

The question before us of what type of medical work satisfies the requirement of Section 306(a.2)(1) that physicians performing IREs must be "active in clinical practice" is a matter of first impression. The Act does not define "clinical practice." No decision of this Court or of any of the other appellate courts of this Commonwealth has addressed what constitutes "clinical practice" or the purpose of Section 306(a.2)(1)'s "clinical practice" requirement.[3]

---

**3.** Contrary to Employer's contention, the unreported decision of this Court in *Allison v. Workers' Compensation Appeal Board (Archbishop Carroll High School)*, 2013 WL

6207413 (Pa.Cmwlth. No. 856 C.D.2013, filed November 25, 2013), did not consider these issues. In *Allison*, this Court analyzed whether an IRE physician satisfied the "clinical

■ The Bureau has addressed this issue and defined the term "active in clinical practice" in its impairment rating regulations. Bureau Regulation 123.103 provides that "[f]or purposes of this subchapter, the phrase 'active in clinical practice' means the act of providing preventive care and the evaluation, treatment and management of medical conditions of patients on an ongoing basis." 34 Pa.Code § 123.103(b). This language, "preventive care *and* the evaluation, treatment *and* management of medical conditions of *patients," id.* (emphasis added), which is both conjunctive and references patients as an essential aspect of the practice, requires that the physician's work involve some connection to the care or treatment of patients in order to constitute a "clinical practice."

■ A regulation promulgated by the agency charged with administering a statute is entitled to deference if it is a reasonable construction of the statutory language and is consistent with the statute. *Bayada Nurses, Inc. v. Department of Labor and Industry,* 607 Pa. 527, 554–58, 8 A.3d 866, 881–84 (2010). Regulation 123.103's definition is a reasonable construction of the Act's language. Requiring that "clinical practice" involve some connection to care and treatment of patients is consistent with the medical definition of the term. *See, e.g., Merriam–Webster Medical Desk Dictionary* 149 (Rev. Ed. 2002) (defining "clinical" in the phrase "clinical practice" as "involving or concerned with the direct observation and treatment of living patients"); *Dorland's Illustrated Medical Dictionary* 340–41 (28th Ed. 1994) (defining "clinical" as "pertaining to a clinic or the bedside; pertaining to or founded on actual observation and treat-

ment of patients" and defining "clinic" as "an establishment where patients are admitted for special study and treatment"). Indeed, Dr. Antonelli herself conceded in her deposition that the term "clinical practice" means a practice "where you see patients and you provide hands-on treatment." (Antonelli Dep. at 12, R.R. at 89.)

Employer contends that no connection to patient treatment should be required, arguing that the legislative intent in imposing the "clinical practice" requirement was only to ensure that IRE physicians be up to date in their qualifications and medical knowledge. We do not agree. Employer is correct that the purpose of Section 306(a.2) as a whole is to reduce workers' compensation costs and restore efficiency to the workers' compensation system. *Gardner,* 585 Pa. at 368 n. 1, 379, 888 A.2d at 759 n. 1, 765; *Hilyer v. Workers' Compensation Appeal Board (Joseph T. Pastrill, Jr. Logging),* 847 A.2d 232, 235 (Pa.Cmwlth.2004). The fact that provisions for reduction in disability status by IRE were enacted to reduce workers' compensation costs, however, does not shed light on the General Assembly's purpose in imposing active "clinical practice" as a mandatory qualification for physicians entrusted to perform that important evaluation. Employer has not shown that there is anything in the legislative history of Section 306(a.2) suggesting that the purpose of the "clinical practice" requirement was merely to ensure current qualifications.

Moreover, Employer's argument is contrary to the rules of statutory construction. It is a fundamental principle of statutory construction that each word in a statutory provision is to be given meaning and not

practice" requirement, but the question there was whether an average of 20 hours per week of clinical practice satisfied the requirement that the physician "maintained the minimum active clinical practice" of at least 20 hours per week, not whether the physician's work was clinical in nature. Slip op. at 6–9, 2013 WL 6207413 at *3–*4.

be treated as mere surplusage. *In re Employees of Student Services*, 495 Pa. 42, 52, 432 A.2d 189, 195 (1981); *Coon v. Civil Service Commission for Allegheny County Police and Firemen*, 654 A.2d 241, 244 (Pa.Cmwlth.1995), *appeal dismissed*, 545 Pa. 63, 679 A.2d 1263 (1996); *see also* Statutory Construction Act of 1972, 1 Pa. C.S. § 1921(a). If the General Assembly's sole intent were to make sure that IRE physicians were up to date in their knowledge and not retired, a requirement that they be "active in practice," in addition to licensure, board certification and use of the current AMA Guides, would have sufficed, and the requirement of *"clinical* practice" would be superfluous. The legislature's choice to include the additional term clinical, which connotes patient treatment, suggests that the purpose of Section 306(a.2)(1)'s "clinical practice" requirement is to ensure that IRE physicians have a medical practice in which their judgments have genuine consequences for patient care and treatment, and to exclude physicians whose only work is to provide opinions and evaluations for legal determinations.

■ Employer claims that interpreting "clinical practice" as requiring involvement in patient care and treatment will exclude competent occupational medicine physicians from performing IREs because physicians specializing in that field do not generally have private patients. This contention is without merit. Nothing in the Bureau's regulation or this Opinion requires that IRE physicians have "private" patients. Rather what "clinical practice" mandates is that the physician's practice relate to patient treatment and care. This broad requirement may be satisfied by treatment or management of injuries as a panel physician hired by the patient's employer or workers' compensation insurer. Evaluation or diagnosis of patients for pur-

poses of recommending or referring for medical treatment by other physicians can likewise constitute clinical practice because it is a part of the treatment and care of patients. There is no reason to believe that requiring IRE physicians to practice medicine related to patient care and treatment, in addition to rendering evaluations and opinions for legal proceedings, is unduly restrictive or contrary to the General Assembly's purpose in requiring that IRE physicians be "active in clinical practice."

■ Employer argues that even if the term "clinical practice" requires that an IRE physician have involvement in medical care or treatment of patients, it is satisfied by Dr. Antonelli's past treatment of patients as a Capital Health System physician. We agree that Dr. Antonelli's work for Capital Health System did constitute "clinical practice." However, that part of Dr. Antonelli's work had ceased ten months before her IRE of Claimant. (Antonelli Dep. at 37–39, R.R. at 114–116.) It therefore cannot satisfy the requirement of Section 306(a.2)(1) that the IRE be "by a physician ... who *is active* in clinical practice for at least twenty hours per week." 77 P.S. § 511.2(1) (emphasis added).

Employer also argues that Dr. Antonelli's testimony as a whole and her examinations of pilots satisfy the requirements for a "clinical practice." These arguments likewise fail. Dr. Antonelli's testimony as a whole is quite clear that she was not currently providing any treatment or care to any patients at the time of the IRE. (Antonelli Dep. at 7, 9–11, 36–39, R.R. at 84, 86–88, 113–116.) While she did characterize the pilots that she examined as "patients" and testified that she kept their files and examined them on an ongoing basis (*id.* at 36, R.R. at 113), Dr. Antonelli testified that her practice with respect to the pilots consisted solely of examinations and evaluation to determine their medical

qualifications to fly, not any evaluation for treatment or medical care. (*Id.* at 10–11, R.R. at 87–88.) At no point in her testimony did Dr. Antonelli assert that she ever referred any of the pilots for treatment of conditions that she diagnosed in her examinations. Moreover, there was no evidence that the pilot examinations were a substantial enough amount of her practice to support a finding of a 20–hour per week "clinical practice." Dr. Antonelli not only did not quantify this part of her work, but characterized those examinations as a small part of her work and testified that most of her work consisted of utilization reviews and peer reviews. (*Id.* at 10–11, R.R. at 87–88.)

■ Because a practice consisting solely of workers' compensation independent medical examinations, workers' compensation IREs, physical examinations for certification and qualification requirements, utilization reviews and peer reviews does not satisfy the requirement that the IRE be "by a physician … who is *active in clinical practice* for at least twenty hours per week," 77 P.S. § 511.2(1) (emphasis added), Dr. Antonelli's IRE of Claimant was invalid and Employer's Modification Peti-

tion was properly denied.[4] Accordingly, we affirm the Board's order.[5]

## ***ORDER***

AND NOW, this 12th day of March, 2014, the order of the Workers' Compensation Appeal Board in the above matter is AFFIRMED.

4. We recognize that the Bureau selected Dr. Antonelli and that the invalidity of the IRE was not caused by Employer. Employer could therefore be entitled to obtain a new IRE *nunc pro tunc*, if the invalidation of Dr. Antonelli's IRE deprived it of automatic relief under Section 306(a.2)(1) or otherwise prevented it from obtaining the same relief with a new IRE. *Stanish*, 11 A.3d at 577–78. It does not, however, appear that Dr. Antonelli's IRE was under Section 306(a.2)(1)'s self-executing provision or that the invalidation of this IRE deprived Employer of the ability to obtain the same relief through a new IRE, and Employer has not requested any relief here other than reversal of the denial of its Modification Petition.

5. We do not base our affirmance of the Board's order on the WCJ's conclusions that

Dr. Antonelli submitted "incorrect information" to the Bureau and "failed to meet her obligation to inform the Bureau" of the change in her practice (WCJ Decision at 6–7) because those conclusions are not supported by the record. The form on which the WCJ relied as showing agreement to notify the Bureau of future changes was signed by Dr. Antonelli in December 2010, long after she had left Capital Health System, and no commitment to notify the Bureau of future changes appears in her 2008 application for approval as an IRE physician or in any document in the record that predates the change in her practice. (IRE Physician Acceptance Form, R.R. at 164; Application for Approval as IRE Physician, R.R. at 165–172.)