**Christopher COMBINE, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (NATIONAL FUEL GAS DISTRIBUTION CORPORATION), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 3, 2008.

Decided Aug. 14, 2008.

Ronald D. Amrhein, Jr., Sharon, for petitioner.

Peter A. Pentz, Erie, for respondent.

BEFORE: McGINLEY, Judge, FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Christopher Combine (Claimant) petitions for review from an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a Workers' Compensation Judge (WCJ) granting a Modification Petition filed by National Fuel Gas Distribution Corporation (Employer) converting Claimant's disability status from total disability to partial disability based on an impairment rating of twenty percent. We reverse.

Claimant sustained a work-related injury to his left knee on December 4, 2000 in the nature of a medial meniscus tear. Employer acknowledged this injury in a Notice of Compensation Payable and began paying Claimant total disability benefits. On July 12, 2006, Employer filed a Modification Petition seeking to change Claimant's disability status from total to partial disability based on the fact that Claimant underwent an impairment rating evaluation (IRE) on June 20, 2006 and was deemed to have a twenty percent impairment. Claimant filed a timely answer asserting modification is not appropriate as he has not reached maximum medical improvement (MMI).

In a decision dated April 30, 2007, the WCJ granted Employer's Modification Petition. The WCJ rejected Claimant's argument that a finding that he has reached MMI must be made prior to calculating his impairment rating stating as follows:

Claimant objected that the examination and impairment rating is invalid because Dr. Jurenovich did not form an opinion that Claimant had reached maximum medical improvement, which claimant argues is a prerequisite to conducting an impairment rating evaluation. Such argument is not correct. Pennsylvania has promulgated statutory and regulatory rules which govern the conduct of impairment rating evaluations in Pennsylvania. A finding of maximum medical improvement is not part of that statutory scheme.

Reproduced Record (R.R.) at 86–7a.

Claimant appealed the WCJ's decision to the Board which affirmed in an

order dated February 29, 2008. This appeal followed.[1]

 Claimant argues that the Board erred in concluding that the Pennsylvania Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2708, does not require an IRE physician to determine that an injured worker is at maximum medical improvement as a prerequisite to calculating the worker's impairment rating. This is a question of statutory construction and, as such, our review is plenary. *City of Philadelphia v. Workers' Compensation Appeal Board (Williams)*, 578 Pa. 207, 215, 851 A.2d 838, 843 (2004). The object of interpretation and construction of Pennsylvania statutes is to ascertain and effectuate the intention of the General Assembly. *Kramer v. Workers' Comp. Appeal Bd. (Rite Aid Corp.)*, 584 Pa. 309, 321, 883 A.2d 518, 525 (2005). When the words of a statute are clear and free from all ambiguity, it should be interpreted solely from the plain meaning of its words and the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. *Gardner v. Workers' Compensation Appeal Board (Genesis Health Ventures)*, 585 Pa. 366, 888 A.2d 758 (2005); *Ramich v. Workers' Compensation Appeal Board (Schatz Elec., Inc.)*, 564 Pa. 656, 770 A.2d 318 (2001); *Hilyer v. Workers' Compensation Appeal Board (Joseph T. Pastrill, Jr. Logging)*, 847 A.2d 232 (Pa.Cmwlth.2004). It is only when "the words of the statute are not explicit" on the point at issue that resort to statutory construction is appropriate. *Snizaski v. Workers' Compensation Appeal Board (Rox Coal Co.)*, 586 Pa. 146, 161, 891 A.2d 1267, 1276 (2006).

Section 306(a.2) of the Act, added by the Act of June 24, 1996, P.L. 350, 77 P.S. § 511.2, provides, in pertinent part:

(1) When an employee has received total disability compensation ... for a period of one hundred four weeks, unless otherwise agreed to, the employee shall be required to submit to a medical examination which shall be requested by the insurer within sixty days upon the expiration of the one hundred four weeks to determine the degree of impairment due to the compensable injury, if any. *The degree of impairment shall be determined based upon an evaluation by a physician ... pursuant to the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment."*

(2) If such determination results in an impairment rating that meets a threshold impairment rating that is equal to or greater than fifty per centum impairment under the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment," the employee shall be presumed to be totally disabled and shall continue to receive total disability compensation benefits ... If such determination results in an impairment rating less than fifty per centum impairment under the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment," the employee shall then receive partial disability benefits ...

(5) Total disability shall continue until ... the employee's condition improves to an impairment rating that is less than fifty per centum of the degree of impairment defined under the most recent edi-

---

1. Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence and whether constitutional rights were violated. *Sysco Food Servs. of Phila. v. Workers' Compensation Appeal Board (Sebastiano)*, 940 A.2d 1270 (Pa. Cmwlth.2008).

tion of the American Medical Association "Guides to the Evaluation of Permanent Impairment."

(6) Upon request of the insurer, the employee shall submit to an independent medical examination in accordance with the provisions of section 314 to determine the status of impairment: Provided, however, That for purposes of this clause, the employee shall not be required to submit to more than two independent medical examinations under this clause during a twelve-month period.

. . .

(8)(i) For purposes of this clause, the term "impairment" shall mean an anatomic or functional abnormality or loss that results from the compensable injury and is *reasonably presumed to be permanent.*

(ii) For purposes of this clause, the term *"impairment rating" shall mean the percentage of permanent impairment* of the whole body resulting from the compensable injury . . . (Emphasis added).

For the purposes of interpreting the meaning of Section 306(a.2) of the Act, attention must be given to language contained in the most recent edition of the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (*Guides* ). Robert D. Rondinelli et al., Am. Med. Assoc., *Guides to the Evaluation of Permanent Impairment.* (6th ed.2008). Specifically, we note the following:

**2.3c When are impairment ratings performed?**

Only permanent impairment may be rated according to the *Guides,* and only after the status of "Maximum Medical Improvement" (MMI) is determined, as explained in Section 2.5e. Impairment should not be considered permanent until a reasonable time has passed for the healing or recovery to occur. This will depend on the nature of underlying pathology, as the optimal duration for recovery may vary considerably from days to months. The clinical findings must indicate that the medical condition is static and well stabilized for the person to have reached MMI . . .

*Id.* at 24.

**2.5e Maximum Medical Improvement**

*Maximum Medical Improvement* refers to a status where patients are as good as they are going to be from the medical and surgical treatment available to them. It can also be conceptualized as a date from which further recovery or deterioration is not anticipated, although over time (beyond 12 months) there may be some expected change . . .

Thus, MMI represents a point in time in the recovery process after an injury when further formal medical or surgical intervention cannot be expected to improve the underlying impairment. Therefore, MMI is not predicated on the elimination of symptoms and/or subjective complaints. Also, MMI can be determined if recovery has reached the stage where symptoms can be expected to remain stable with the passage of time, or can be managed with palliative measures that do not alter the underlying impairment substantially, within medical probability . . .

**2.5f Permanency**

*Permanenecy* is the condition whereby impairment becomes static or well stabilized with or without medical treatment and is not likely to remit in the future despite medical treatment, within medical probability . . . This term is usually synonomous with MMI, usually occurring when all reasonable medical treatment expected to improve the condition has been offered or provided.

Impairment ratings are to be performed when an individual is at a state of permanency.

*Id.* at 26–7.

But for the use of the term "shall," which has already been construed by the Supreme Court to be mandatory in the context of Section 306(a.2)(1) of the Act, there is no ambiguity in the statute.[2] Section 306(a.2)(1) of the Act plainly provides that when a claimant submits to an IRE, his degree of impairment "shall be determined . . . pursuant to the most recent edition of the American Medical Association" "Guides to the Evaluation of Permanent Impairment." Inasmuch as the *Guides* indicate that impairment may be calculated only after an individual reaches MMI, the physician conducting the IRE must first determine that the claimant has reached MMI prior to determining his percentage of impairment due to the work-related injury.[3]

Even if we were to undertake further statutory construction, our determination that Section 306(a.2) of the Act requires a claimant to have reached MMI before his impairment rating can be calculated is bol-

stered by the fact that the General Assembly precludes an employer from obtaining an IRE until the claimant has obtained 104 weeks of total disability. This "waiting period" correlates to the instruction contained in the *Guides* that impairment should not be considered permanent, which is synonomous with MMI, until a reasonable time has passed for healing or recovery to occur. Further, Section 306(a.2)(6) prohibits an employer from seeking more than two IREs in a twelve month period. Rather than permitting multiple successive IREs, this language emphasizes the fact that an injured worker's condition must become static prior to undergoing such an examination. Moreover, Section 306(a.2)(8)(i) of the Act defines "impairment" as a functional abnormality or loss resulting from the work injury that "is reasonably presumed to be permanent." Similarly, the *Guides* direct that MMI is synonymous with permanency and that MMI is found when a person's condition has reached a point when their condition has become static and although their condition may change over time, further recovery or deterioration is not expected.

---

**2.** In *Gardner*, our Supreme Court acknowledged that the term "shall" has been interpreted to be both mandatory and directory. *Gardner*, 585 Pa. at 377, 888 A.2d at 764–5. It reasoned, however, that because the General Assembly used the term "shall" three times in Section 306(a.2)(1) of the Act and each time imposed a duty on one of the three parties to the IRE process, the obligations imposed could not be viewed any other way but mandatory. *Id.* 585 Pa. at 378, 888 A.2d at 765. The Court indicated the third duty was that " 'the degree of impairment shall be determined . . . by a physician' according to specific criteria." *Id.* (citing Section 306(a.2)(i) of the Act).

**3.** Although the newly printed sixth edition of the *Guides* is the most recent edition, we note that the fourth edition, the most recent edition at the time Section 306(a.2) was added to

the Act, also contained language requiring an individual be at MMI before an impairment rating can be determined. Specifically, that edition stated "[b]efore a judgment regarding impairment is made, it must be shown that the problem has been present for a period of time, is stable, and is unlikely to change in future months in spite of treatment." Am. Med. Assoc., *Guides the Evaluation of Permanent Impairment* 3 (4th ed.1993). Moreover, it stated "[i]f an impairment is not *permanent*, it is inappropriate to characterize it as such and evaluate it according to *Guides* criteria." *Id.* at 315. (Emphasis in original). Thus, it is not as if the idea of MMI was foreign to the *Guides* at the time Section 306(a.2) was added to the Act and that the legislature could not have intended for the calculation of an impairment rating to be contingent upon a claimant being at MMI.

■ The language used by the legislature in establishing an employer's right to an IRE parallels the language used by the *Guides* in delineating the correct procedure for a physician to follow to calculate an individual's impairment rating. Thus, we agree with Claimant that the IRE physician, Michael Jurenovich, D.O., first had to determine whether he was at MMI prior to determining his impairment rating.[4]

■ In light of the fact that we have determined that Section 306(a.2) of the Act required Dr. Jurenovich to first determine whether Claimant was at MMI prior to calculating his impairment rating, we must determine whether Dr. Jurenovich's testimony established that Claimant was at MMI in addition to establishing he had a twenty percent impairment rating. Our review of Dr. Jurenovich's testimony reveals that it does not.

The *Guides* instruct that an individual is at MMI when his condition has become static or stable and that while further deterioration or recovery may occur at some point in the future, one would not expect a change in condition at any time in the immediate future. Dr. Jurenovich indicated that Claimant had a partial knee replacement with a unispacer three years prior to his examination in March of 2003. Claimant's examination revealed swelling around the knee joint with medial laxity. Moreover, Claimant complained of continued discomfort. According to Dr. Jureno-

vich, Claimant is a candidate for a total knee replacement. Nonetheless, because of Claimant's relatively young age, forty-six at the time of Dr. Jurenovich's deposition, he believed such a procedure would not be undertaken for a few years. Dr. Jurenovich agreed a total knee replacement "could" provide complete pain relief. He further agreed the procedure "could" give Claimant better motion and stability, reduce his swelling, and eliminate his limping. Dr. Jurenovich added, however, that there are no guarantees. Dr. Jurenovic's testimony as a whole, does not reflect that Claimant is at MMI. (R.R. at 17–8a, 23a, 27a).

We are troubled by the fact that when Dr. Jurenovich was specifically asked whether or not Claimant was at MMI, he explained that he did not believe a finding of MMI was required under Pennsylvania law and therefore he did not address the issue. He added, "I usually don't take that question because that requires a different kind of evaluation." *Id.* at 29a.

This Court is mindful that medical experts need not use magic words so long as the expert's testimony taken as a whole fairly supports the proposition at issue. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Prods.),* 721 A.2d 1152 (Pa.Cmwlth.1998). Dr. Jurenovich was asked point blank, however, whether Claimant had reached MMI and failed to

---

4. We further point out that the Act is remedial in nature and is subject to liberal construction to benefit the injured worker. *Gallie v. Workers' Compensation Appeal Board (Fichtel & Sachs Indus.),* 580 Pa. 122, 859 A.2d 1286 (2004). Section 306(b)(1) of the Act, 77 P.S. § 512, limits a claimant's receipt of partial disability benefits to 500 weeks. The General Assembly, however, has established no cap on total disability benefits. *Stanek v. Workers' Compensation Appeal Board (Greenwich Collieries),* 562 Pa. 411, 423, 756 A.2d 661, fn. 9 (2000). Receipt of an impairment rating of less than fifty percent converts a claimant's disability status from total to partial disability and places a cap on the claimant's benefits. Construing Section 306(a.2) of the Act to require an IRE physician to determine that the claimant is at MMI prior to calculating his impairment rating benefits the injured worker because if an IRE physician does not believe a claimant is at MMI, no impairment rating can be calculated and the claimant will continue to receive total disability with no limit to the duration of those benefits.

give a response to the call of the question. Moreover, without qualifying what he would have done differently, Dr. Jurenovich indicated that if he were required to make a finding of MMI, he would have done a "different kind of evaluation." Such statement significantly impacts our ability to find that Claimant was at MMI at the time Dr. Jurenovich conducted his examination. Therefore, this Court is constrained to find that Dr. Jurenovich failed to establish Claimant was at MMI and that his determination that Claimant had a twenty percent impairment was not calculated in accordance with the most recent edition of the *Guides.* Consequently, we must reverse the Board's Order finding no error in the WCJ's decision granting Employer's Modification Petition. Claimant's disability status is that of total disability.

## *ORDER*

AND NOW, this 14th day of August, 2008, the Order of the Workers' Compensation Appeal Board in the above-captioned matter is reversed. Claimant's disability status is that of total disability.