**Nicole NEFF, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (PENNSYLVANIA GAME COMMISSION), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 10, 2014.

Decided Jan. 8, 2015.

Darryl R. Slimak, State College, for petitioner.

James A. Mazzotta, Pittsburgh, for respondent.

BEFORE: RENÉE COHN JUBELIRER, Judge, P. KEVIN BROBSON, Judge, and ROCHELLE S. FRIEDMAN, Senior Judge.

OPINION BY Judge BROBSON.

Nicole Neff (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board), dated January 9, 2014. The Board affirmed the decision of a Workers' Compensation Judge (WCJ), which granted the modification petition filed by the Pennsylvania Game Commission (Employer) pursuant to the Workers' Compensation Act (Act).[1] For the reasons set forth below, we now affirm.

Claimant suffered an injury while in the course and scope of her employment with Employer on February 20, 2004. On April 30, 2004, Employer issued a Notice of Temporary Compensation Payable, which described the injury as "right wrist—carpal tunnel syndrome—screwing bluebird boxes together." On July 13, 2004, the Bureau of Workers' Compensation circulated a Notice of Conversion of Temporary Compensation Payable to Compensation Payable. Subsequently, Employer filed a termination petition and suspension petition on April 24, 2006, and June 21, 2006, respectively. Thereafter, Claimant filed a petition to review compensation and a petition to review medical treatment on July 30, 2006. By decision circulated on February 21, 2008, a WCJ (1) determined that Claimant had not fully recovered from the carpal tunnel injury, (2) expanded the description of the work injury to include chronic lateral epicondylitis of the right elbow, and (3) denied the termination and suspension petitions. On February 13, 2009, the parties entered into a compromise and release agreement, which settled all benefits payable to Claimant for the right carpal tunnel injury, but continued Employer's liability for the chronic lateral epicondylitis of the right elbow.

On January 7, 2011, Employer filed a modification petition against Claimant, maintaining the position that Claimant's temporary total disability status due to the right lateral epicondylitis injury had resolved into a permanent impairment of less than 50%, allowing for a modification of wage loss benefits from temporary total disability to partial disability. Employer based its modification petition on an impairment rating evaluation (IRE) performed by William R. Prebola, Jr., M.D.,[2] on December 15, 2010, which resulted in a determination that Claimant had reached maximum medical improvement (MMI) and had suffered a whole person impairment rating of 1%. Claimant filed an answer to the modification petition, denying that the IRE established partial disability, and a WCJ held hearings on the matter. Following the hearings, the WCJ issued a decision granting Employer's modification petition based on the results of the IRE and modified Claimant's benefits accordingly. Claimant then appealed to the Board, which affirmed. Claimant now petitions this Court for review.

■ On appeal,[3] Claimant essentially argues that the Board and WCJ erred in

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2708.

2. Dr. Prebola is a physician licensed to practice medicine in the Commonwealth of Pennsylvania who is board certified in physical and rehabilitation medicine. (WCJ Decision at 3.)

3. Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, and whether constitutional rights were violated. *Combine v. Workers' Comp. Appeal Bd. (Nat'l Fuel Gas Distrib. Corp.),* 954 A.2d 776, 778 n. 1 (Pa.Cmwlth. 2008), *appeal denied,* 600 Pa. 765, 967 A.2d

granting Employer's modification petition because the modification petition was based upon an invalid IRE. Claimant argues that an IRE is premature and invalid as a matter of law when there is a reasonable potential for the claimant to undergo future surgery that could cause a change in her condition, as a claimant cannot be at MMI [4] in such a circumstance. Claimant argues that such is the case here, as it is undisputed that Claimant could undergo additional surgery in an attempt to improve her elbow condition, and, therefore, Claimant has not yet reached MMI. In support of her position, Claimant largely relies upon our decision in *Combine v. Workers' Compensation Appeal Board (National Fuel Gas Distribution Corp.)*, 954 A.2d 776 (Pa.Cmwlth.2008), *appeal denied*, 600 Pa. 765, 967 A.2d 961 (2009), and further argues that *Combine* is factually indistinguishable from this case and thus controlling. Claimant also argues that the WCJ and Board capriciously disregarded or otherwise misconstrued the evidence contradicting Dr. Prebola's medical opinions.

We conclude that the decisions below are not in error, because Employer's modification petition was based on a valid IRE. Section 306(a.2)(1) of the Act, added by the Act of June 24, 1996, P.L. 350, 77 P.S. § 511.2(1), provides:

> When an employe has received total disability compensation ... for a period of one hundred four weeks, unless otherwise agreed to, the employe shall be required to submit to a medical examination which shall be requested by the insurer within sixty days upon the expiration of the one hundred four weeks to determine the degree of impairment due to the compensable injury, if any. The degree of impairment shall be determined based upon an evaluation by a physician who is licensed in this Commonwealth, who is certified by an American Board of Medical Specialties approved board or its osteopathic equivalent and who is active in clinical practice for at least twenty hours per week, chosen by agreement of the parties, or as designated by the department, pursuant to the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment [ (Guides) ]."

If the determination as to a claimant's degree of impairment results in an impairment rating of 50% or greater, the claimant is presumed to be totally disabled and will continue to receive total disability compensation benefits. 77 P.S. § 511.2(2). If, however, such a determination results in an impairment rating of less than 50%, the claimant shall receive partial disability benefits after proper notice of the modification is given.[5] *Id.*

961 (2009). Further, where appropriate, under *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 571 Pa. 189, 812 A.2d 478 (2002), we must also review a WCJ's decision for capricious disregard of evidence.

4. Throughout her brief, Claimant also refers to the term "permanency," which is synonymous with MMI. *See Combine*, 954 A.2d at 779–80.

5. Where the employer requests the IRE within the 60–day period and the claimant's impairment rating is less than 50%, the change

in disability status is automatic. *Diehl v. Workers' Comp. Appeal Bd. (I.A. Constr.)*, 607 Pa. 254, 5 A.3d 230, 245 (2010). Additionally, as is the case here, an employer may use the IRE process to obtain a change in an employees' disability status from total to partial after the expiration of the 60–day window in the context of a proceeding held pursuant to the "traditional administrative process." *Gardner v. Workers' Comp. Appeal Bd. (Genesis Health Ventures)*, 585 Pa. 366, 888 A.2d 758, 768 (2005). In such a circumstance, the WCJ must make appropriate credibility determinations concerning the IRE and the physician

■ In *Combine*, this Court held that an IRE physician must first determine that a claimant has reached MMI before calculating an impairment rating. *Combine*, 954 A.2d at 780. As quoted in *Combine*, the Guides provide the following information regarding MMI:

**2.3c When are impairment ratings performed?**

Only permanent impairment may be rated according to the *Guides*, and only after the status of "Maximum Medical Improvement" (MMI) is determined, as explained in Section 2.5e. Impairment should not be considered permanent until a reasonable time has passed for the healing or recovery to occur. This will depend on the nature of underlying pathology, as the optimal duration for recovery may vary considerably from days to months. The clinical findings must indicate that the medical condition is static and well stabilized for the person to have reached MMI . . . [.]

. . . .

**2.5e Maximum Medical Improvement**

*Maximum Medical Improvement* refers to a status where patients are as good as they are going to be from the medical and surgical treatment available to them. It can also be conceptualized as a date from which further recovery or deterioration is not anticipated, although over time (beyond 12 months) there may be some expected change . . . [.]

Thus, MMI represents a point in time in the recovery process after an injury when further formal medical or surgical intervention cannot be expected to improve the underlying impairment. Therefore, MMI is not predicated on the elimination of symptoms and/or subjective complaints. Also, MMI can be determined if recovery has reached the stage where symptoms can be expected to remain stable with the passage of time, or can be managed with palliative measures that do not alter the underlying impairment substantially, within medical probability . . . [.]

*Id.* at 779. As stated in *Combine*, "[t]he Guides instruct that an individual is at MMI when his condition has become static or stable and that while further deterioration or recovery may occur at some point in the future, one would not expect a change in condition at any time in the immediate future." *Id.* at 781.

Here, Dr. Prebola testified that based on his examination of Claimant, her history, and her records, Claimant had right lateral epicondylitis, which was the work-related medical condition from the February 20, 2004 injury. (Reproduced Record (R.R.) at 93a.) Dr. Prebola repeatedly opined that Claimant was at MMI. (R.R. at 93a, 95a, 111a, 114a–16a.) Dr. Prebola also opined that, pursuant to the Guides, Claimant had a 1% whole person impairment. (R.R. at 96a.) With regard to the possibility of future surgery, Dr. Prebola explained that he knew there was "some discussion of surgery, but . . . with or without treatment, a patient still can be at [MMI]. That includes a surgical procedure." (R.R. at 95a.) Dr. Prebola agreed that surgery for Claimant's elbow condition would "be a reasonable treatment option" and that he did not disagree that there was a 25% chance that the surgery would help with Claimant's problems. (R.R. at 103a, 108a–09a, 112a–13a, 116a, 119a). Dr. Prebola testified that the surgery had potential to improve Claimant's

who performed it, and the claimant may introduce her own evidence concerning her degree of impairment. *Diehl*, 5 A.3d at 245.

"pain" and "symptoms," (R.R. at 103a, 116a–17a), but that the surgery would not cure Claimant, who would have permanent damage and remain impaired. (R.R. at 98a, 116a–17a). Specifically, Dr. Prebola explained:

At this time frame, a surgery would still be a reasonable treatment option. I still believe she is going to have permanent damage. I do not believe that a surgery is going to cure her. And I believe you mentioned that she testified that someone told her that there could be a 25 percent improvement. So she may have some improvement of her symptoms, but she's still going to have impairment with the surgery.

So putting all that together she would still be at [MMI] because MMI defines that the patient can still get additional treatment, and the patient would still have waxing and waning symptoms. And I believe that's what [Claimant] would have.

(R.R. at 116a–17a.) Dr. Prebola also opined that the surgery would not be significantly beneficial, and that it could even make her condition worse. (R.R. at 98a, 103a, 117a.) Dr. Prebola's testimony is compatible with the Guides' description of MMI.

▮▮ Whether a claimant has reached MMI is a matter of application of the Guides to a claimant's medical condition. Thus, whether a claimant has reached MMI is an inherently medical determination, which, by necessity, must be the subject of medical testimony. Provided that the medical expert considers the appropriate factors required by the Guides when rendering a determination that a claimant has reached MMI, a WCJ may rely on the expert's determination that a claimant has reached MMI. In such circumstances, we will not disturb the determination of MMI or otherwise second-guess the weight of the medical evidence.

▮ Moreover, such an approach to a determination of MMI is consistent with our well-settled precedent that determinations as to evidentiary weight and credibility are solely for the WCJ as fact-finder. See Cittrich v. Workmen's Comp. Appeal Bd. (Laurel Living Ctr.), 688 A.2d 1258, 1259 (Pa.Cmwlth.1997). The WCJ "is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. As such, determinations as to witness credibility and evidentiary weight are not subject to appellate review." O'Neill v. Workers' Comp. Appeal Bd. (News Corp. Ltd.), 29 A.3d 50, 56 n. 3 (Pa.Cmwlth.2011) (citation omitted).

Here, the WCJ found persuasive and credible Dr. Prebola's medical opinions that Claimant had reached MMI by the date of the IRE on December 15, 2010, and that the ongoing effects of the acknowledged work injury have resulted in a 1% whole person impairment. (WCJ Decision at 7.) The WCJ based his credibility determination on Dr. Prebola's demonstrated familiarity with Claimant's medical history, his clear and logical expression of opinion, the consistency of his explanations, the corroboration of his opinions, in part, by Vincent F. Morgan, M.D.,[6] the

6. Dr. Morgan performed an independent medical examination (IME) of Claimant on March 31, 2010. (R.R. at 123a.) In his report, Dr. Morgan explained that "[i]nsofar as lateral epicondylitis is concerned, [Claimant] has reached [MMI] from a conservative point of view." (R.R. at 126a.) Although Dr. Morgan further explained that "[i]f [Claimant] elects to proceed with surgery[,] ... [MMI] will be achieved within three months of time of surgery," Dr. Morgan also observed that, in his opinion, it was "relatively unlikely that surgical remediation will have any significant impact on this case." (R.R. at 126a–27a.) Dr. Morgan also opined that Claimant would most likely have to avoid continuous repeti-

lack of any significant qualification or retraction of his opinions despite a thorough cross-examination, and the absence of specific medical opinions disputing his opinions of MMI and the percentage of impairment. (*Id.*) Thus, because Dr. Prebola's credited medical opinions establish that Claimant had reached MMI in accordance with the Guides, Employer's modification petition was not based on an invalid IRE.

Furthermore, we reject Claimant's argument that this matter is factually indistinguishable from *Combine*. In *Combine*, we determined that the IRE physician's testimony did not establish that Claimant was at MMI, reasoning:

> [The IRE physician] indicated that Claimant had a partial knee replacement with a unispacer three years prior to his examination in March of 2003. Claimant's examination revealed swelling around the knee joint with medial laxity. Moreover, Claimant complained of continued discomfort. According to [the IRE physician], Claimant is a candidate for a total knee replacement. Nonetheless, because of Claimant's relatively young age, forty-six at the time of [the IRE physician's] deposition, he believed such a procedure would not be undertaken for a few years. [The IRE physician] agreed a total knee replacement "could" provide complete pain relief. He further agreed the procedure "could" give Claimant better motion and stability, reduce his swelling, and eliminate his limping. [The IRE physician] added, however, that there are no guarantees. [The IRE physician's] testimony as a whole, does not reflect that Claimant is at MMI.
>
> We are troubled by the fact that when [the IRE physician] was specifically

asked whether or not Claimant was at MMI, he explained that he did not believe a finding of MMI was required under Pennsylvania law and therefore he did not address the issue. He added, "I usually don't take that question because that requires a different kind of evaluation."

> This Court is mindful that medical experts need not use magic words so long as the expert's testimony taken as a whole fairly supports the proposition at issue. [The IRE physician] was asked point blank, however, whether Claimant had reached MMI and failed to give a response to the call of the question. Moreover, without qualifying what he would have done differently, [the IRE physician] indicated that if he were required to make a finding of MMI, he would have done a "different kind of evaluation." Such statement significantly impacts our ability to find that Claimant was at MMI at the time [the IRE physician] conducted his examination. Therefore, this Court is constrained to find that [the IRE physician] failed to establish Claimant was at MMI and that his determination that Claimant had a twenty percent impairment was not calculated in accordance with the most recent edition of the *Guides*.

*Combine*, 954 A.2d at 781–82 (citations omitted).

 Here, when asked how he performs an IRE, Dr. Prebola testified as follows:

> Well, you obviously follow the rules of the ... Guides, ..: review any records that are available, review any diagnostic tests that are available, then I'll take a history. Then after putting all that in-

tive activity in the future, "even if the surgery appeared to eliminate most of her discomfort." (R.R. at 127a.)

formation together, if I feel the patient is at [MMI], then I'll proceed with performing the impairment rating evaluation.

In [Claimant's] case, that's exactly what I did.

(R.R. at 93a.) Moreover, as discussed above, Dr. Prebola unequivocally and repeatedly opined that Claimant had reached MMI, regardless of whether she undergoes surgery in the future, and that Claimant had an impairment rating of 1%. Again, because Dr. Prebola's credited testimony establishes that Claimant was at MMI and that his impairment rating was calculated in accordance with the most recent edition of the Guides, Claimant is not entitled to a reversal based on *Combine*.[7]

Accordingly, we affirm the order of the Board.

### *ORDER*

AND NOW, this 8th day of January, 2015, the order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

---

**7.** Finally, we reject Claimant's argument that the WCJ and Board capriciously disregarded or otherwise misconstrued the evidence contradicting Dr. Prebola's medical opinions. A capricious disregard of evidence only occurs when the WCJ deliberately ignores relevant, competent evidence. *Capasso v. Workers' Comp. Appeal Bd. (RACS Assocs., Inc.),* 851 A.2d 997, 1002 (Pa.Cmwlth.2004). Capricious disregard of evidence "is a deliberate and baseless disregard of apparently trustworthy evidence." *Williams v. Workers' Comp. Appeal Bd. (USX Corp.–Fairless Works),* 862 A.2d 137, 144 (Pa.Cmwlth.2004). In *Leon E. Wintermyer,* our Supreme Court noted that "[w]here there is substantial evidence to support an agency's factual findings, and

those findings in turn support the conclusions, it should remain a *rare* instance in which an appellate court would disturb an adjudication based upon capricious disregard." *Wintermyer,* 812 A.2d at 487 n. 14 (emphasis added). Specifically, Claimant cites the reports of Dr. Morgan and Willie E. Thompson, M.D., who also performed an IME on Claimant on March 21, 2005, in disputing Dr. Prebola's opinion that Claimant was at MMI. Dr. Thompson's evaluation was conducted years prior to Dr. Prebola's evaluation, however, and the WCJ explained that Dr. Morgan's report actually corroborated Dr. Prebola's opinion in part. (WCJ Decision at 7.) Thus, we will not disturb the decisions below on account of capricious disregard.