# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nelson Building Services          :
Group - aka Dale E. Nelson        :
and/or Dale E. Nelson Co., Inc.,  :
                     Petitioner   :
                                  :
          v.                      :   No. 1027 C.D. 2016
                                  :   No. 1028 C.D. 2016
Workers' Compensation Appeal      :   Submitted: February 17, 2017
Board (Ponce and Uninsured        :
Employers Guaranty Fund and       :
Complete Exteriors and Malvern    :
Renovations),                     :
                     Respondents  :


**BEFORE:   HONORABLE P. KEVIN BROBSON, Judge**
**HONORABLE ANNE E. COVEY, Judge**
**HONORABLE JOSEPH M. COSGROVE, Judge**


*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                    **FILED:  June 13, 2017**


Dale E. Nelson Company, Incorporated (Dale Nelson Company), petitions this Court for review of an order of the Workers' Compensation Appeal Board (Board). The Board affirmed a decision of the Workers' Compensation Judge (WCJ), which awarded workers' compensation benefits to Christian Ponce (Claimant).[1] For the reasons set forth below, we affirm.

---

[1] The Board affirmed the order of the WCJ as modified. The WCJ labeled two sections in the decision with the heading "Findings of Fact." The Board modified the decision so that the second heading instead reads "Conclusions of Law."

This case entails a confusing array of potential employers of an off-the-books manual laborer, Claimant, who was injured after falling from a roof on September 4, 2013, in Villanova, Pennsylvania. Claimant did roofing work for Complete Exteriors, a sole-proprietorship owned by Shon Devid Perez Lopez (Lopez).[2] Complete Exteriors frequently worked as a subcontractor for Dale Nelson Company on roofing projects and other similar work orders. Malvern Renovations (Malvern), whose role in the instant case is contested, seems to have started as an off-shoot of Dale Nelson Company for purposes of obtaining workers' compensation insurance.

On November 5, 2013, Claimant filed a claim petition against "Malvern Restoration Inc. aka Nelson Building Services Group,"[3] alleging that he sustained a work-related injury when he fell off a roof on September 4, 2013, and that as a result of the injury he was totally disabled. Malvern and Nelson Building Services Group, later discovered to be two different entities, answered separately and denied all the material allegations of the petition. On December 5, 2013, Claimant filed a UEGF claim petition against the Department of Labor & Industry, Uninsured Employers Guaranty Fund (Fund), naming Complete Exteriors as an uninsured employer.

---

[2] It appears that Lopez left the country. Moreover, throughout the record, Lopez is referred to by various names: Shon Devid, Shawn David, John David, Shon Lopez, Shon Perez Lopez, and Shown Devid Lopez. The parties seem to be in agreement that all of these variants refer to the same person—the owner of Complete Exteriors.

[3] Claimant incorrectly named "Malvern Restoration, Inc." in the November 5, 2013 claim petition; the actual entity is "Malvern Renovations, LLC."

The WCJ held a hearing on February 2, 2014, where only counsel for Claimant, Malvern's insurance carrier, and the Fund were present. Initially, the attorneys indicated to the WCJ that Nelson Building Services Group may be a fictitious name used by Dale Nelson Company, and that Malvern and Nelson Building Services Group may be separate entities. The WCJ instructed the attorneys to investigate as to who the proper parties were and to consider whether there were any stipulations of fact that they were willing to make.

Then, at that same February 2, 2014 hearing, Claimant testified. He testified that for three years, he made $150 a day, $900 a week, doing roofing work for Lopez, who would pick him up every day to drive to the work site. Claimant testified that Lopez was the only person who worked at Complete Exteriors. Claimant testified that he received payment from Lopez in cash or by check. Claimant testified that he went to the Nelson Building Services Group warehouse every day and that he knew the name Pat Nelson. He testified that on September 4, 2013, he slid and fell 30 feet off of a roof. An ambulance took Claimant to Hahnemann University Hospital, where Claimant underwent surgeries for a broken arm, a broken elbow, and a broken leg, each on the right side of his body. Claimant testified that he had to stay at the hospital for two months. Claimant testified that he was right-handed and that he could not bend his right elbow or use his right arm. He also testified that he could not walk without using crutches. He testified that physical therapists had to come to his house to work with him. Claimant's counsel stipulated that Claimant was an undocumented immigrant worker and that "he does not have legal papers to work." (Reproduced Record (R.R.) at 65a.)

3

On February 14, 2014, and then again on February 19, 2014, Claimant filed a UEGF claim petition against the Fund and Nelson Building Services Group.

The next month, on March 4, 2014, the WCJ conducted another hearing. Present at the hearing were attorneys for Claimant, Malvern's insurance carrier, the Fund, and Dale Nelson Company (who was not present at the prior hearing). Counsel for Claimant confirmed that Malvern and Nelson Building Services Group were separate entities. Counsel for Claimant also indicated that he was unsure whether Dale Nelson Company and Nelson Building Services Group were the same entity. The WCJ indicated that after the attorneys ascertained who the appropriate parties were, Claimant could depose Dale Nelson.

Thereafter, Claimant filed two additional UEGF claim petitions against the Fund and Nelson Building Services Group, as well as two UEGF claim petitions against the Fund and Dale Nelson Company.

On June 4, 2014, Claimant deposed Dale Nelson. He confirmed that Nelson Building Service Group was a fictitious name that Dale Nelson Company used for business. Dale Nelson testified that he was the sole owner of Dale Nelson Company and had been since 1973. He testified that his brother, Patrick Nelson, is the owner of Malvern. Dale Nelson testified that Dale Nelson Company's work entailed general contracting, mostly for home improvements, which included roofing, siding, windows, doors, gutters and downspouts, kitchens, and bathrooms. Dale Nelson testified that when his brother started Malvern, all the Dale Nelson Company employees became Malvern employees. Dale Nelson testified that he received the work order for a shingle replacement at the house where Claimant was injured. He testified that his company was the general contractor for the roofing at the house, and that he subcontracted the project out to Complete Exteriors. Dale

4

Nelson testified that after Malvern was created, the payment process entailed the following path: Dale Nelson Company would receive money from the home owner; Dale Nelson Company would keep some profit; the remainder of the money was then transferred to Malvern, which paid the employees and subcontractors. Dale Nelson testified that he did not know Claimant. He testified that his company had done business with Complete Exteriors for years, but he stopped using it as a subcontractor a month before his deposition.

Claimant deposed Patrick Nelson on August 20, 2014. Patrick Nelson testified that he started Malvern in the spring of 2013, after Dale Nelson Company had difficulty obtaining workers' compensation insurance. He testified that he was the sole owner of Malvern. Patrick Nelson testified that Dale Nelson Company was the general contractor for the work at the house where Claimant fell, and that the relationship that Malvern had with Dale Nelson Company was never one in which Malvern acted as a general contractor. He testified that he never had any contact with the homeowner at the house and never went to the work site. The only involvement that Malvern had with the house where Claimant fell was to pay the subcontractor, Complete Exteriors.

The WCJ held a hearing on September 23, 2014, where only counsel for Claimant, Malvern's insurance carrier, and the Fund were present. Counsel for Dale Nelson Company was not present. The attorneys informed the WCJ that there was an issue with the notices of the hearing, which only counsel for Claimant and the Fund had received. Claimant's attorney submitted as evidence the deposition transcripts of Dale and Patrick Nelson. The WCJ allotted 30 days for the attorneys to depose Lopez. The WCJ also informed the attorneys that she would not bifurcate the case between the issues of employment and disability.

5

On October 28, 2014, the WCJ held another hearing. Attorneys were present for Claimant, Malvern's insurance carrier, the Fund, and Dale Nelson Company. Initially, the attorneys informed the WCJ that family members of Lopez had stated that he left the country and, thus, could not be deposed. All attorneys appear to have agreed to the statement by the WCJ that there was an injury to Claimant in the course and scope of his employment and that the only issue in this matter was the identity of the responsible employer. (*See* R.R. at 118a.) The WCJ gave the following characterization of how the case would proceed:

> The issue on [sic] this case is who's the [e]mployer? And once we identify who the [e]mployer is, that person's on the risk. And then you can present your medical.
>
> . . . .
>
> There's no harm in having those benefits start and then a new petition's filed if you want to address extent of disability or the nature of injury.

(R.R. at 120a-122a.) The WCJ instructed that she needed to have all evidence from the parties pertaining to the employment relationship with Claimant at the following hearing.

The WCJ held a hearing on December 9, 2014, where attorneys for every party—Claimant, Malvern's insurance carrier, the Fund, and Dale Nelson Company—were present. Claimant's counsel submitted into evidence an operative report and a discharge summary from Hahnemann University Hospital. When the attorney for the Fund attempted to address Claimant's alleged disability by introducing an Independent Medical Evaluation (IME) and mentioning Claimant's immigration status, the WCJ gave the following response:

6

Mr. Dougherty, would you please stay off of that issue? I have told you at every hearing the issue that I am going to decide is who the compensable employer is. This Claimant has been in the system since November 2013 and the only reason he's not on the check is because there's an issue as to who should be paying the medical benefits and who should be paying the indemnity benefits. I appreciate that you're zealously representing your client, but take the message from the Court. You're pushing me too far. No. I am not accepting that report for extent of disability. What I might consider it for is the nature of injury and that's it.

(R.R. at 140a-41a.) The WCJ also stated that the IME would be appropriate for the "next round of litigation." (R.R. at 134a.) After Claimant's counsel declined to object, the WCJ admitted the IME "solely for the purpose of the nature of injury." (R.R. at 142a.)

The WCJ rendered a decision and awarded workers' compensation benefits to Claimant. The WCJ found Claimant credible based on Claimant's testimony and demeanor during his testimony in front of the WCJ. The WCJ found that Claimant was an employee of Complete Exteriors and that Dale Nelson Company was Claimant's statutory employer under Section 302(a) of the Workers' Compensation Act (Act).[4] The WCJ determined that Complete Exteriors and Dale Nelson Company were, therefore, primarily liable for Claimant's work-related injury. The WCJ also determined that the Fund was secondarily liable in the event that Complete Exteriors and Dale Nelson Company did not pay Claimant. The WCJ ordered these parties to provide payment for all of Claimant's reasonable and necessary medical expenses related to his work injury. The WCJ also ordered

---

[4] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 461.

7

these parties to pay wage loss benefits at the rate of $600 per week from September 4, 2013 onward, unless later modified under the Act. Finally, the WCJ awarded reasonable litigation costs to Claimant and ordered that Dale Nelson Company be liable for the amount of the award that Complete Exteriors failed to pay.[5]

The Fund and Dale Nelson Company appealed to the Board. The Board affirmed the order of the WCJ, as modified (to correct a typographical error in the WCJ's decision). Dale Nelson Company then petitioned this Court for review of the Board's decision.

On appeal,[6] Dale Nelson Company first argues that the Board erred by determining that Dale Nelson Company, as opposed to Malvern, was Claimant's statutory employer. Next, Dale Nelson Company argues that the WCJ should have accepted the Fund's IME as it pertained to disability. Dale Nelson Company contends that the WCJ improperly excluded evidence that addressed the extent of disability and Claimant's immigration status. Dale Nelson Company also argues that it was prejudiced by not being able to cross-examine Claimant. Dale Nelson Company argues that Claimant presented insufficient evidence to establish his

---

[5] The WCJ ordered Complete Exteriors to pay an unreasonable contest fee of 20% of the total award up to and including the date of the WCJ's decision. The WCJ determined that Dale Nelson Company was not liable for the unreasonable contest fee.

[6] Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, and whether constitutional rights were violated. *Combine v. Workers' Comp. Appeal Bd. (Nat'l Fuel Gas Distrib. Corp.)*, 954 A.2d 776, 778 n.1 (Pa. Cmwlth. 2008), *appeal denied*, 967 A.2d 961 (Pa. 2009). Further, where appropriate, under *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 812 A.2d 478 (Pa. 2002), we must also review a WCJ's decision for capricious disregard of evidence.

8

average weekly wage. Finally, Dale Nelson Company argues that the notice of claim to the Fund was untimely.[7] Dale Nelson Company additionally requests this Court to remand the matter to a different WCJ in light of the errors described in this paragraph. (Dale Nelson Company's Br. at 2-3.)

In response, Claimant first argues that the WCJ and Board correctly concluded that the evidence in the record supported the determination that Dale Nelson Company was Claimant's statutory employer. Claimant argues that a WCJ is free to determine the chronological length of a disability based on all evidence presented, including Claimant's own testimony. Claimant next argues that because there was evidence in the record to support a finding of total disability, Claimant's immigration status does not prevent recovery. Claimant further argues that

---

[7] In its brief, Dale Nelson Company asserts that the Board made the following errors: (1) erroneously affirmed the WCJ's finding that the only issue was the correct identity of Claimant's employer; (2) capriciously disregarded the fact that the WCJ, despite confining the case to the issue of employment, nonetheless made determinations on additional issues; (3) affirmed the WCJ's finding that Claimant's testimony was "unchallenged," when Dale Nelson Company's attorney did not cross-examine Claimant; (4) erroneously failed to recognize that Claimant failed to present evidence establishing disability beyond 52 weeks; (5) erroneously failed to recognize that the WCJ precluded defendants from introducing contradictory medical evidence; (6) capriciously disregarded Claimant's limitation of benefits based on his undocumented alien status; (7) capriciously disregarded the lack of evidence to establish Claimant's earnings and benefit rate; (8) erred as a matter of law by determining that Dale Nelson Company was Claimant's statutory employer, rather than Malvern; (9) erroneously failed to conclude that Malvern was Claimant's admitted statutory employer; and (10) capriciously disregarded evidence that the notice of claim to the Fund was untimely. Many of these issues are intertwined or overlapping. This Court's restatement of the questions and our analysis addresses the issues presented by Claimant.

Claimant's credible testimony established his weekly earnings. Finally, Claimant argues that his notice of claim to the Fund was timely.[8]

While the Fund advised the Court that it would not file a brief to contest the Board's decision, Malvern did file a brief. Malvern's arguments appear to mirror those made by Claimant. Malvern additionally argues that despite Dale Nelson Company's assertions to the contrary, Malvern and Dale Nelson Company were not co-contractors on the roofing order for the house where Claimant fell. In support, Malvern argues that it was not able to hire or fire Complete Exteriors for this project, nor did it have any contact with Complete Exteriors or the homeowner and, thus, did not exert the same amount of control as Dale Nelson Company did. Malvern argues that it really played no part in the roofing project other than issuing payment to Complete Exteriors.

As an initial matter, we agree with the WCJ and Board regarding the determination that Dale Nelson Company is Claimant's statutory employer. Dale Nelson Company argues that the Board failed to apply the five-prong test set forth in *McDonald v. Levinson Steel Co.*, 153 A. 424 (Pa. 1930), for determining whether an entity can be held liable as an employer of a third-party. We are compelled to agree with Claimant, however, that our Supreme Court has already made clear in *Six L's Packing Company v. Workers' Compensation Appeal Board (Williamson)*, 44 A.3d 1148 (Pa. 2012), that the *McDonald* test does not apply to Section 302(a) of the Act.

---

[8] Claimant additionally argues that medical evidence is unnecessary where the causal link between employment and disability is obvious. We do not read Dale Nelson Company's brief, however, to contest this causal connection.

10

Section 302(a) of the Act assigns liability to a general contractor for the employees of a subcontractor in the event the subcontractor that is primarily liable does not provide such payment. Section 302(a) of the Act provides:

> *A contractor who subcontracts all or any part of a contract and his insurer shall be liable for the payment of compensation to the employes of the subcontractor* unless the subcontractor primarily liable for the payment of such compensation has secured its payment as provided for in this act. Any contractor or his insurer who shall become liable hereunder for such compensation may recover the amount thereof paid and any necessary expenses from the subcontractor primarily liable therefor.
>
> For purposes of this subsection, *a person who contracts with another* (1) to have work performed consisting of (i) the removal, excavation or drilling of soil, rock or minerals, or (ii) the cutting or removal of timber from lands, or (2) *to have work performed of a kind which is a regular or recurrent part of the business, occupation, profession or trade of such person shall be deemed a contractor, and such other person a subcontractor*. This subsection shall not apply, however, to an owner or lessee of land principally used for agriculture who is not a covered employer under this act and who contracts for the removal of timber from such land.

(Emphasis added.) First, it is difficult to dispute that Dale Nelson Company is the statutory employer when Dale Nelson himself admitted that his company was the general contractor and Complete Exteriors the subcontractor for the house where Claimant fell. (R.R. at 46a-47a.) Further reinforcing that fact is Dale Nelson's testimony that he contracted with another, Lopez and Complete Exteriors, to have work performed of a kind which is a regular or recurrent part of the business—in this case roofing. (R.R. at 11a, 27a.) That testimony matches exactly with the statutory language of Section 302(a). Dale Nelson Company hired Complete Exteriors to complete a job that Dale Nelson Company regularly performs, and,

11

therefore, Dale Nelson Company was Claimant's statutory employer under Section 302(a).

Next, Dale Nelson Company alleges procedural unfairness in two basic forms: not being able to introduce an IME to contest the extent of disability and not being able to cross-examine Claimant. In a claim petition, the claimant has the burden to establish that he sustained a compensable injury, and that the injury continues to cause disability during the pendency of the petition. *Inglis House v. Workmen's Comp. Appeal Bd. (Reedy)*, 634 A.2d 592 (Pa. 1993). "Thus, a WCJ is authorized, when considering a claim petition, to award compensation for a work-related injury, and, in addition, to terminate benefits as of the date the disability ceased, although a termination petition has not been filed, if the claimant has not carried [his] burden of proof to establish a continuing disability." *Ohm v. Workmen's Comp. Appeal Bd. (Caloric Corp.)*, 663 A.2d 883, 886 (Pa. Cmwlth. 1995). If the WCJ determines that the evidence demonstrates only a closed period of disability, the WCJ may so find. *Id.* Importantly, though, the Act "does not impose upon the [WCJ] the burden of looking beyond the relief requested in the pleadings," because he "is required only to consider matters properly raised" by a party. *Cont'l Ins. Grp. v. Workmen's Comp. Appeal Bd. (Gerbino)*, 638 A.2d 419, 421 (Pa. Cmwlth. 1994).

Here, the sole petition before the WCJ was Claimant's claim petition. In evaluating this claim petition, the WCJ was only required to determine whether Claimant suffered a compensable injury that continues to cause disability. *Innovative Spaces v. Workmen's Comp. Appeal Bd. (DeAngelis)*, 646 A.2d 51 (Pa. Cmwlth. 1994), *appeal denied*, 663 A.2d 696 (Pa. 1995). Claimant testified that he worked as a manual laborer on projects such as the roofing work, which

caused his injury. He testified that he is right-handed, that he broke his right elbow, right arm, and right leg, and that he cannot walk without crutches or bend his right arm. The WCJ found this testimony credible. The WCJ, therefore, had an adequate factual basis to make a determination that Claimant suffered a work-related injury and that the injury caused disability during the pendency of the petition.

Dale Nelson Company argues that the WCJ erred, however, by failing to allow Dale Nelson Company, the Fund, and Malvern to present evidence contesting the extent of Claimant's disability. Specifically, Dale Nelson Company contends that the WCJ erred in refusing to consider fully the Fund's IME that ostensibly addresses disability. In so doing, Dale Nelson Company conflates Claimant's burden to prove some level of disability throughout the pendency of the petition with the opportunity to oppose the *extent* of Claimant's disability. None of the parties disputed during the hearing that Claimant had suffered a work-related injury resulting in some degree of disability. They never asserted that there was no work-related injury or that there was no subsequent disability. In fact, the IME submitted by the Fund actually confirmed that Claimant suffered a disabling injury, further treatment is required, and Claimant cannot return to work without restrictions. (R.R. at 321a-24a.) Thus, the IME, which the Fund apparently sought to introduce to prove that Claimant was only partially disabled, would not have impacted the WCJ's determination that Claimant suffered a work-related injury that caused disability during the pendency of the petition. The WCJ, therefore, did not err in refusing to accept the IME as to the extent of continuing disability for the adjudication of the claim petition.

13

Dale Nelson Company's argument to the contrary is essentially that, rather than having discretion to consider relief outside of the claim petition, the WCJ was required to afford it the right to litigate relief other than that requested through the claim petition. On this point, *Continental Insurance Group* is instructive. In *Continental Insurance Group*, the WCJ determined that the employer did not satisfy its burden of proof with regard to a termination petition. The employer contended that the WCJ erred in failing, *sua sponte*, to grant a modification of the claimant's benefits based upon the evidence of record, despite having never filed a modification petition. This Court held that while a WCJ may have the authority to grant such relief, the WCJ was under no obligation to do so. Here, neither Dale Nelson Company nor the Fund ever filed a petition challenging the extent of Claimant's disability. *Continental Insurance Group* instructs that though the WCJ possessed the authority to grant relief outside the claim petition, she was not required to do so. *Cont'l Ins. Grp.*, 638 A.2d at 421.

At the December 9, 2014 hearing, where the Fund tried to introduce the IME, the Fund only attempted to raise the extent of disability in connection with Claimant's alien status, seemingly as an attempt to bar Claimant from receiving any benefits. A claimant's status as an undocumented alien worker does not preclude him from receiving total disability benefits under the Act. *Reinforced Earth Co. v. Workers' Comp. Appeal Bd. (Astudillo)*, 810 A.2d 99, 105-06 (Pa. 2002). Ordinarily, an employer seeking to suspend benefits must demonstrate evidence that there is an available job the claimant is capable of performing that would pay wages equal to or greater than his pre-injury wage. *Ortiz v. Workers' Comp. Appeal Bd.*, 60 A.3d 209, 212 (Pa. Cmwlth. 2013). An employer seeking to suspend the disability benefits of a claimant who is an unauthorized alien, on the

other hand, is not required to show job availability. *Id.* In that situation, the employer need only demonstrate that the claimant is an unauthorized alien and that the claimant is no longer totally disabled. *Id.*

Regarding Claimant's alien status, however, in *Cruz v. Workers' Compensation Appeal Board (Kennett Square Specialties)*, 99 A.3d 397 (Pa. 2014), our Supreme Court explicitly rejected the argument that Dale Nelson Company now raises—that a WCJ was required to consider Claimant's immigration status in order to adjudicate a claim petition. There, the Supreme Court held:

> Inasmuch as [a work-related injury and its causal effect on wage earning capacity (disability)] are the only two things a claimant is required to demonstrate in order to successfully maintain a claim petition and obtain compensation for wage loss and medical treatment costs under the [Act], a claimant's eligibility to lawfully work in the United States is not a relevant consideration in establishing either of these factors. We therefore reject Employer's assertion that a claimant, as part of his or her burden of proof in a claim petition, is required to establish his employment eligibility status under federal immigration law.

*Cruz*, 99 A.3d at 407. Dale Nelson Company's argument to the contrary is without merit. The WCJ, therefore, did not err in refusing to consider Claimant's immigration status.

In regard to Dale Nelson Company's opportunity to cross-examine Claimant, Rule 302(a) of the Pennsylvania Rules of Appellate Procedure provides that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." At no point before the WCJ did counsel for Dale Nelson Company object to not having been able to cross-examine Claimant on

15

February 4, 2014, or request that the WCJ compel Claimant to provide additional testimony. Dale Nelson Company, therefore, waived this issue.

Dale Nelson Company next appears to contest the WCJ's finding that Claimant's average weekly wage was $900. This Court is unclear as to whether Dale Nelson Company is disputing the finding itself or arguing that the Board failed to address Dale Nelson Company's argument that the finding was unsupported. In either case, Dale Nelson Company's contention is meritless. The Board addresses the issue on pages 24 and 25 of its opinion and did not, therefore, "capriciously disregard[] the argument that there was insufficient evidence to establish Claimant's earnings and benefit rate." (*See* Dale Nelson Company's Br. at 2.) Moreover, to the extent that Dale Nelson Company argues that the finding of Claimant's average weekly wage was $900 is not supported by substantial evidence, it is well-settled that determinations as to evidentiary weight and credibility are solely for the WCJ as fact-finder. *Neff v. Workers' Comp. Appeal Bd. (Pa. Game Comm'n)*, 109 A.3d 291, 296 (Pa. Cmwlth. 2015). The WCJ "is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. As such, determinations as to witness credibility and evidentiary weight are not subject to appellate review." *O'Neill v. Workers' Comp. Appeal Bd. (News Corp. Ltd.)*, 29 A.3d 50, 56 n.3 (Pa. Cmwlth. 2011) (citation omitted). The WCJ credited Claimant's testimony regarding his average weekly wage, and we may not review such a determination on appeal.

Finally, Dale Nelson Company briefly advances the argument that the notice of claim to the Fund was untimely. This argument is also meritless. First, we agree with Claimant that Dale Nelson Company lacks standing to contest notice of the claim to the Fund in the instant appeal. As the Supreme Court explained in

16

*Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269 (Pa. 1975), in order to be aggrieved by an action and, thereby, have standing to challenge an action, a party's interest in the subject matter of a lawsuit must be substantial, direct, and immediate. *Wm. Penn Parking*, 346 A.2d at 281. Dale Nelson Company did not suffer an injury by the allegedly untimely notice of claim to the Fund. Second, none of the parties raised this issue before the WCJ and, thus, the issue of timeliness of the notice of claim is waived. Pa. R.A.P. 302(a). Third, had Dale Nelson Company not waived the issue by failing to raise it below, it would have done so by failing to develop it in the instant appeal. Rule 2119(a) of the Pennsylvania Rules of Appellate Procedure provides:

> The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, *followed by such discussion and citation of authorities as are deemed pertinent*.

(Emphasis added.) This Court has held that "[m]ere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of [a] matter." *Commonwealth v. Spontarelli*, 791 A.2d 1254, 1259 n.11 (Pa. Cmwlth. 2002). There is no citation to any legal authority in this short section of Dale Nelson Company's brief and our review is, therefore, precluded.

Accordingly, we affirm the order of the Board.

_____
P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nelson Building Services : 
Group - aka Dale E. Nelson : 
and/or Dale E. Nelson Co., Inc., : 
          Petitioner : 
           : 
       v. :   No. 1027 C.D. 2016
           :   No. 1028 C.D. 2016
Workers' Compensation Appeal : 
Board (Ponce and Uninsured : 
Employers Guaranty Fund and : 
Complete Exteriors and Malvern : 
Renovations), : 
          Respondents : 

# **O R D E R**

AND NOW, this 13th day of June, 2017, the order of the Workers' Compensation Appeal Board is AFFIRMED.

 

 

                        _____
                        P. KEVIN BROBSON, Judge